(C. D. 1121)

AMERICAN ASKANIA CORPORATION *v.* UNITED STATES

United States Customs Court, First Division

(Decided July 29, 1948)

*Philip Stein* for the plaintiff.

*Paul P. Rao,* Assistant Attorney General (*Joseph E. Weil,* special attorney), for the defendant.

Before OLIVER, COLE, and MOLLISON, Judges

OLIVER, Presiding Judge: This is a protest against the classification made by the collector on certain articles described on the invoice as "2 magnetic vertical field balances" which were assessed with duty at

60 per centum ad valorem under paragraph 228 (a) of the Tariff Act of 1930 as "optical measuring instruments." The importer in its protest claims that the articles are properly dutiable at only 27½ per centum ad valorem under paragraph 372 or, in the alternative, at only 40 per centum ad valorem under paragraph 360 of the same act. The pertinent provisions of the paragraphs referred to are as follows:

PAR. 228. (a) Spectrographs, spectrometers, spectroscopes, refractometers, saccharimeters, colorimeters, prism-binoculars, cathetometers, interferometers, haemacytometers, polarimeters, polariscopes, photometers, opthalmoscopes, slit lamps, corneal microscopes, optical measuring or optical testing instruments, testing or recording instruments for ophthalmological purposes, frames and mountings therefor, and parts of any of the foregoing; all the foregoing, finished or unfinished, 60 per centum ad valorem.

PAR. 372. * * *; all other machines, finished or unfinished, not specially provided for, 27½ per centum ad valorem: * * *.

PAR. 360. Scientific and laboratory instruments, apparatus, utensils, appliances (including surveying and mathematical instruments), and parts thereof, wholly or in chief value of metal, and not plated with gold, silver, or platinum, finished or unfinished, not specially provided for, 40 per centum ad valorem; drawing instruments, and parts thereof, wholly or in chief value of metal, 45 per centum ad valorem: *Provided*, That all articles specified in this paragraph, when imported, shall have the name of the maker or purchaser and beneath the same the name of the country of origin die sunk conspicuously and indelibly on the outside, or if a jointed instrument on the outside when closed.

Plaintiff's sole witness, who was exceptionally well-qualified, stated that magnetic vertical field balances such as those before us are instruments used in geophysical prospecting to determine the magnetic characteristics and structural arrangements of geographical formations or mineral deposits (R. 8). He testified that these magnetic field balances which are also known as "magnetometers" measure the vertical component of the magnetic attraction by comparison with gravity. The witness then described the operation of a magnetic field balance substantially as follows: In order to make a measurement of the magnetic vertical attraction or intensity a tripod is set up and leveled, then the imported instrument is placed on it and arranged at right angles to the magnetic meridian; the balance system is then released and the magnetic system is allowed to settle on its bearing for the oscillations of the system. After the oscillations have ceased, the position of the magnetic system is read and the magnetic system is then reclamped and the instrument rotated on its tripod, 180 degrees from its starting position, and the same procedure is repeated. The purpose of the readings is to eliminate errors because of imperfections in the instrument which cannot be entirely eliminated in construction. The witness further testified that "There is a lever and cam mechanism in the imported balances, which operates the clamping device, which lifts the magnetic system from its bearing and presses it upward against the strings which are attached to the underside of the head

of the instrument," and that the operation of the lever is an essential feature of the field balance. With respect to the manner in which the findings on a magnetic field balance are read, the witness stated that a mirror is attached to the balance system which projects a pencil of light on the scale situated in the upper part of the instrument, and the reading taken there indicates the position of the magnetic system in space. In answer to the question whether, in the use of the magnetic field balance within itself, any force or energy is exerted, the witness testified that the article in question indicates the balance between two forces, gravity force and magnetic attraction; that gravity acts on one side of the magnetic system, whereas the magnetic attraction acts on the other (R. 13). When asked specifically in what way the magnetic vertical field balance modifies or utilizes magnetic force as compared to gravity, the witness stated that the gravity force remains substantially stationary between locations, whereas the magnetic attraction changes, resulting in different deflections of the magnetic system from place to place; that in adjusting the instrument for a given area, in order to take care of the differences in the magnetic or gravity impulses indicated on the machine, small counterparts, as in a chemical balance, are adjusted in their relative position so that the magnetic instrument is approximately horizontal; and that there is also a mechanical feature provided on the magnetic system so that its sensitivity can be regulated (R. 14). The witness, after defining the various articles enumerated in the paragraph of the tariff act under which these balances were classified, testified that the magnetic vertical field balances before us are not any of the articles so enumerated and described. On cross-examination, the witness testified that there are lenses and one small prism in the magnetic field balances before us and that a telescope is usually or generally employed in the reading, or in the determination or use of the magnetic field balance.

No testimony was introduced by the Government in support of the collector's classification.

Counsel for the plaintiff in his brief directs our attention to the case of *United States* v. *American Machine & Metals, Inc.*, 29 C. C. P. A. (Customs) 137, C. A. D. 183. In that case certain Vicker's Hardness Testing Machines were classified by the collector under paragraph 228 (a), *supra*, at 60 per centum ad valorem as optical testing instruments. The articles were designed for use and used in industry to determine the hardness of metals. As so used, the articles employed an "indenter" which was pressed into the metal to be tested at a predetermined load and at a predetermined rate of loading. The impressions in the metal left by that operation were then measured by means of a microscope permanently attached to each of the articles and through such measurement and the record of the predetermined load and rate

of loading, the hardness of the metal was determined. Our appellate court in that case stated as follows at page 143:

We are in agreement with appellant that a microscope is an optical instrument, and that a microscope is essential to the practical use of the articles here involved; but we cannot agree with appellant that all articles having as an essential feature a microscope or other optical device are optical instruments.

and further at page 144:

* * * In our opinion an article cannot be classified as an optical measuring or optical testing instrument unless the dominant or primary use of the article lies in the employment of its optical features. * * *

The uncontradicted testimony adduced by the plaintiff establishes that the articles at bar are not any of the articles enumerated in the paragraph of the tariff act under which the instruments here were classified. Specifically, the imported articles are not optical measuring or optical testing instruments. It was established through the witness that the portion of the involved instruments, which included the scale and eyepiece (magnifier) and the three lenses, was not an integral or essential part of the instrument. The reading portion, of which the lenses are a part, merely indicates the deflection of the magnetic system. Plaintiff's witness stated that this device was not an essential part of the field balance and that an accurate reading could be obtained without the use of the lenses or reading portion of the instrument.

Counsel for the defendant has indicated that it deems as controlling of the issue in this case, the decision of this court in *Asiatic Petroleum Corp.* v. *United States*, 19 Cust. Ct. 3, C. D. 1058, wherein the court stated, in part, that:

* * * It appears of record that their internal mechanism as well as their mode of operation is substantially similar to that of the gravimeters which in *Shell Petroleum Corp.* v. *United States, supra,* were held to be classifiable as machines not specially provided for under paragraph 372 of the Tariff Act of 1930. It is here established that these gradiometers, as were the gravimeters there passed upon by the court, are operated by the force of gravity. Indeed, the only difference in their use is that one is constructed to measure the gravity gradient whereas the other indicates the total perpendicular gravity force. Inasmuch, therefore, as these gradiometers, like the gravimeters referred to, are mechanical contrivances which utilize and apply the energy or force of gravity, we follow our ruling in the last-cited case and hold that they are machines within the contemplation of said paragraph 372.

We are of opinion that the record herein brings the involved field balances within the principles announced by this court in the *Asiatic Petroleum Corp.* case, *supra*. Accordingly, upon the entire record, and following the cited authorities, we hold the involved field balances to be properly dutiable as machines at only 27½ per centum ad valorem under paragraph 372, Tariff Act of 1930, as claimed by the plaintiff.

The claim of the plaintiff to that extent is, therefore, sustained. Judgment will be rendered accordingly.